IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOE G. HIXSON,

        Plaintiff,

  vs.                                    Civil Action 2:07-CV-437
                                             Judge Watson
                                             Magistrate Judge King

SECRETARY OF HEALTH and
HUMAN SERVICES,

        Defendant.

**REPORT AND RECOMMENDATION**

        This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying, in part, plaintiff's application for a period of disability and disability insurance benefits. This matter is now before the Court on plaintiff's *Statement of Errors* and the Commissioner's *Memorandum in Opposition.*

        Plaintiff Joe G. Hixson was involved in a serious motorcycle accident on July 22, 2001, as a consequence of which he suffered a below the knee amputation of the right leg, a fracture of the right patella and multiple fractures in the fibula and tibia of the left leg, requiring open reduction and rod fixation.

        Plaintiff applied for disability insurance benefits on September 12, 2001. The application was denied initially and upon reconsideration and, following an administrative hearing in January 2003, an administrative law judge concluded that plaintiff was not disabled. *A.R.* 30-45. The Appeals Council remanded the matter to the administrative law judge with directions to obtain additional evidence. *A.R.* 46-48.

        A second administrative hearing was held on August 10, 2005.

*A.R.* 649A-703. Plaintiff, represented by counsel, appeared and testified at the hearing, as did Richard Hutson, M.D., an orthopedic surgeon who testified as a medical expert, and Barry Brown, who testified as a vocational expert. In a decision dated October 21, 2005, the administrative law judge found that plaintiff was disabled by reason of "pain preoccupation," *A.R.* 18, as of March 15, 2005, but that plaintiff's severe impairments did not render him disabled prior to that date. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 20, 2007.

Plaintiff was 49 years old at the time the administrative law judge issued his decision. He has a tenth grade education and prior work experience as a truck driver.

The record establishes that plaintiff has been treated for back problems since at least 1993. *A.R.* 599-600.

Following the July 2001 motorcycle accident, plaintiff's orthopedic surgeon, Brian Davidson, M.D., indicated that plaintiff would be off work for approximately 6 to 9 months. *A.R.* 211. Plaintiff underwent extensive physical therapy.

In July 2002, Robert J. Thompson, M.D., a neurologist, performed a consultative examination of plaintiff at the request of the state agency. According to Dr. Thompson, plaintiff had an abnormal gait pattern. *A.R.* 261. Plaintiff was able to walk on flat, level surfaces. Although he used a cane, Dr. Thompson opined, "use of a cane is not mandatory." *Id.* Range of motion of the lumbar spine was "somewhat reduced in all directions." *Id.* There was "a lot of tenderness over the right [sic] tibia and fibula." *A.R.* 262. According to Dr. Thompson, plaintiff:

> would be unable to do any work that would require him to stand or walk for more than 10 minutes at a time without resting. He would be unable to do any

> lifting or carrying. He cannot kneel or squat. He would be unable to climb or go up and down stairs. There is no impairment with use of his upper extremities.

*A.R.* 262. In a form residual functional capacity assessment, Dr. Thompson indicated that plaintiff could occasionally lift and carry 10 pounds, could stand or walk less than 2 hours throughout an 8-hour workday, is unlimited in his ability to sit, but has postural limitations. *A.R.* 268.

In September 2002, Dr. Lawrence Uhrig, who had treated plaintiff for back pain, apparently saw plaintiff once again. Plaintiff was "advised to get off Vicodin." *A.R.* 598. Plaintiff complained of pain at "end of stump" of his right leg. Dr. Uhrig recommended that plaintiff "see a specialist in pain management." He prescribed pain medication.

Charles E. Lowery, M.D., another of plaintiff's treating physicians, apparently referred plaintiff to Ron P. Linehan, M.D., a specialist in pain management, who began treatment of plaintiff in March 2004. *See A.R.* 586. On initial evaluation, Dr. Linehan noted mild to moderate tenderness to palpation along the medial aspect of the right stump. *A.R.* 612. There was questionable straight leg raising at 90 degrees extension on the right. *Id.* Dr. Linehan suspected that the source of pain in plaintiff's stump "may be neuroma formation at the site." *Id.* There were also symptoms of nerve root irritation with radicular symptoms, the result "most likely of a change in his gait and his posture after his amputation." *A.R.* 612-13.

Throughout the remainder of 2004, Dr. Linehan administered trigger point injections and lumbar epidural steroid injections, with

3

varying degrees of relief.  *A.R.* 592, 604-05, 607-11, 614, 617-20, 636, 638-39, 640.

In February 2005, Dr. Linehan stated that, as of the time of plaintiff's original accident, he was "permanently and totally disabled by virtue of physical disability and **unable to perform less than sedentary work.**"  *A.R.* 614. (emphasis added).  Dr. Linehan completed a residual functional capacity assessment in which he indicated that plaintiff experiences continuous right leg bilateral pain with numbness, tingling and burning with severe muscle spasms and nausea.  *A.R.* 617.  Treatment results in only temporary relief "that helps make pain more tolerable -- life somewhat more enjoyable."  *A.R.* 617.  Plaintiff's pain is severe enough to interfere with the attention and concentration needed to work, *A.R.* 618.  Plaintiff could sit or stand no more than 15 minutes at a time, for less than 2 hours throughout an 8-hour workday.  *A.R.* 618-19.  He must be permitted to sit, stand and walk at will and, if sitting, his legs should be elevated.  *Id.*  According to Dr. Linehan, plaintiff needs a cane.  *Id.*  Plaintiff could only rarely lift and carry less than 10 pounds.  Finally, Dr. Linehan indicated that plaintiff would likely be absent from work more than 4 days per month.  *A.R.* 620.

In May 2005, Dr. Thompson performed a second consultative neurological evaluation of the plaintiff at the request of the administrative law judge.  Plaintiff reported persistent pain in the left leg.  *A.R.* 625.  According to Dr. Thompson, plaintiff was able to walk on flat, level surfaces but had difficulty going up and down steps and walking on uneven surfaces.  *Id.*  Plaintiff reported that he stays at home, reads and watches television.  *A.R.* 626.  On clinical examination,

4

plaintiff's gait pattern was abnormal: "He hobbles and walks slowly." *A.R.* 626. A cane was mandatory. Range of motion of the lumbar spine was reduced in all directions. Again, Dr. Thompson noted "a lot of tenderness over the left tibial [sic] and fibula." *A.R.* 627. According to Dr. Thompson, plaintiff "would be unable to do any work requiring him to stand or walk for more than 10 minutes at a time without resting. He would be unable to do any lifting or carrying. He cannot squat or kneel. He would be unable to climb or go up or down stairs. He has some impairment with using his right upper extremity repetitively or working over his head with his right hand." *A.R.* 627. In a form addressing plaintiff's residual functional capacity, Dr. Thompson indicated that plaintiff could only occasionally lift and carry less than 10 pounds. *A.R.* 691. He could stand or walk less than 2 hours in an 8-hour workday. Plaintiff demonstrated decreased range of motion of the right shoulder. *A.R.* 633.

Plaintiff testified at the second administrative hearing that his pain is continuous. *A.R.* 655. He also has difficulty wearing a prosthesis:

> [There is] just constant pain, ... [and] there is
> a massive amount of problems there in my knee, it
> is extremely loose. It hyperextends and it['s]
> real super loose sideways.

*A.R.* 654. Dr. Linehan's treatment "knocked the edge off" the pain but doesn't eliminate the pain. His back condition has been greatly aggravated by the injuries suffered in the accident. He also complains of pain in his right shoulder. *A.R.* 659.

Plaintiff testified that he does very little around the house. He rarely visits with family and sometimes entertains friends. He tries

to walk.  *A.R.* 670.  On a typical day, he gets dressed, watches television, watches the birds and may run short errands.  *A.R.* 671.  He drives once or twice per week.  He does not drive more because it causes pain and because of the side effects of his medication.  *A.R.* 652.  He spends 12-14 hours a day lying down.  *A.R.* 672.

Dr. Hutson testified that, based upon Dr. Thompson's May 2005 evaluation and report, plaintiff could "do some sedentary work."  *A.R.* 681.  Although plaintiff's impairment neither meets nor equals any listed impairment, Dr. Hutson expressed his opinion that plaintiff could do sedentary work, although plaintiff would "need to have a sit/stand option not to leave the work station.  He could do stand up maybe 5 minutes out of every hours, but it would not have to be consecutive."  *A.R.* 681 [sic].  Plaintiff should avoid repetitive twisting and concentrated exposure to cold, heat, wetness, humidity, vibration, heights or hazardous areas.  He should not squat.  *Id.*  He disagreed with Dr. Thompson's finding that plaintiff cannot lift even 10 pounds occasionally.  *A.R.* 683.  He also disagreed with Dr. Linehan's residual functional capacity assessment because Dr. Linehan "does not list any objective findings" supporting his opinions of disability and, in any event, Dr. Hutson did not "give ... much credence" to a pain management anesthesiologist.  *A.R.* 683.  Dr. Hutson specifically disagreed with Dr. Linehan's statement that plaintiff's pain is severe enough to interfere with attention and concentration.  *A.R.* 685.

In his decision, the administrative law judge found that plaintiff's severe impairments consist of residuals of below the knee right leg amputation, including stump pain, residuals of fractures of the left tibia with chronic pain complaints and chronic pain attributed to

lumbar pain and degenerative disc disease. *A.R.* 16. However, the administrative law judge found that those impairments neither meet nor equal the level of severity described in any listed impairment. In considering plaintiff's residual functional capacity, the administrative law judge found that, prior to March 15, 2005, plaintiff

> could lift up to 10 pounds maximum, standing and walking were limited to a combined total of 2 hours in a work-day; he had to have the option between sitting and standing as needed; he could not work on uneven surfaces, repetitively use foot controls, have exposure to hazards or temperature extremes, or humidity, climb ropes/ladders/scaffolds, balance, squat, kneel, crouch, crawl or repetitively twist at the waist. Therefore, he was limited to a reduced range of sedentary work.

*A.R.* 16. Relying on the testimony of the vocational expert, the administrative law judge found that this residual functional capacity would permit the performance of a significant number of jobs, including such jobs as addresser and assembler.

Since March 15, 2005, however, the administrative law judge found that plaintiff's "chronic pain has escalated to the point of necessitating stress and associated cognitive, as well as social, restrictions that further substantially limit the claimant to the point that he could not be expected to sustain competitive work on a full-time basis." *A.R.* 16. According to the administrative law judge, the evidence of increasing pain preoccupation was first manifested in Dr. Linehan's March 15, 2005, residual functional capacity assessment and was corroborated in Dr. Thompson's May 2005 assessment. *A.R.* 18.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and

employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

The administrative law judge based his finding that plaintiff was disabled as of March 15, 2005, primarily on the opinion and findings of plaintiff's treating pain management specialist, Dr. Linehan. In so finding, the administrative law judge rejected the opinion of Dr. Hutson, the medical expert, who testified that plaintiff was not disabled. The administrative law judge also implicitly rejected the medical expert's opinion that a pain management specialist is not "an adequate expert for determining the severity of an orthopedic impairment." *A.R.* 17.

The administrative law judge rejected, however, the February

2005 opinion of disability in which Dr. Linehan stated that, as of July 22, 2001, *i.e.,* the date of plaintiff's motorcycle accident, plaintiff has been "permanently and totally disabled by virtue of physical disability **unable to perform less than sedentary work.**"  *A.R.* 614 (emphasis added).  The administrative law judge appears to have misread this opinion as reflecting Dr. Linehan's view that plaintiff was capable of sedentary employment: "While Dr. Linehan may consider an individual disabled if he can perform sedentary work, (which the Certificate indicates), the Social Security Act provides otherwise.  An individual who can do sedentary work is not disabled."  *A.R.* 17.  The administrative law judge also incorrectly found that Dr. Linehan's March 2005 physical capacity assessment, upon which the administrative law judge ultimately relied, was inconsistent with the pain specialist's February 2005 opinion: "Clearly, only a month before, the doctor had indicated that the claimant could do sedentary work."  *Id.*

A fair reading of Dr. Linehan's February 2005 opinion suggests that, in Dr. Linehan's view, plaintiff is unable to perform even sedentary work.  So read, that opinion is not inconsistent with Dr. Linehan's March 15, 2005, physical capacities evaluation.  Moreover, the assessments of Dr. Thompson are not inconsistent with Dr. Linehan's assessment.  In 2002, Dr. Thompson found, in the narrative portion of his report, that plaintiff could lift and carry no weight whatsoever.  *A.R.* 262.[1]  There is very little difference between Dr. Thompson's July 2002 report and assessment and his May 2005 report and assessment, which the administrative law judge found supported Dr. Linehan's residual

---

[1] In the accompanying form, Dr. Thompson checked a line that indicated that plaintiff could occasionally lift and carry 10 pounds.  *A.R.* 267.

9

functional capacity assessment.

Under the treating-physician rule, treating physicians are generally accorded greater weight than the opinions of other physicians. *See Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 525, 536 (6th Cir. 1981). Moreover, a decision to deny benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).

In this case, Dr. Linehan's opinions and findings are consistent with and supported by the findings of the consultative examiner, Dr. Thompson, whose July 2002 report and assessment is not materially different from his May 2005 report and assessment and upon which the administrative law judge relied in finding plaintiff disabled as of March 15, 2005. Moreover, the administrative law judge misconstrued Dr. Linehan's February 2005 opinion.

Furthermore, there is simply no conflict in the record regarding plaintiff's claim of disabling pain. Although plaintiff's medical care for the period from early 2002 through March 2004 is sketchy, it is nevertheless clear that plaintiff was in fact receiving treatment during that period of time for pain. Plaintiff testified that he received such treatment, and Dr. Uhrig's September 2002 report referring to plaintiff's use of Vicodin, *A.R.* 598, documents as much. Dr. Uhrig referred plaintiff to a pain specialist. Moreover, plaintiff's testimony regarding his subjective complaints and the reports of his

10

daily activity throughout the entire period of alleged disability are consistent and do not support the administrative law judge's finding that his pain increased during that period of time.

Where evidence of impairments leading to pain is uncontradicted and where there are no conflicts in the medical evidence regarding a claimant's claim of pain, it is error for the administrative law judge to discredit those subjective allegations of pain.  *King v. Heckler,* 742 F.2d 968, 975 (6th Cir. 1984).

Under these circumstances, this Court concludes that the determination by the administrative law judge that plaintiff was disabled as of March 15, 2005 but not prior to that date, lacks substantial support in the record.  Because the primary basis for that finding was the administrative law judge's misreading of the opinion of one of plaintiff's treating physicians, the Court also concludes that plaintiff is entitled to an award of benefits from the period extending from the alleged date of onset to March 15, 2005.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** to the Commissioner with directions for an award of benefits for the period July 22, 2001, through March 15, 2005.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within ten (10) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b).  Response to objections must be filed

within ten (10) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

August 8, 2008                                    *s/Norah McCann King*
                                                  Norah M<sup>c</sup>Cann King
                                                  United States Magistrate Judge